Madam Clerk, please call the next case. 114-3665 McConnell Steele v. Fedrich & Co. Counsel, you may proceed. Thank you, Your Honor. My name is Charles Webster. Webster. Trade for Petitioner. I have a legal argument about... Could you speak up just a little bit? It's being recorded, but we have to hear up here. I have a legal argument about standard prudent proof, prudent offenses. I'm going to address my brief on that. I'd like to elucidate my arguments about a manifest way to the evidence. The Bogle case says that other accidents may have aggravated the condition of a petitioner is irrelevant. The Commission's decision didn't turn on that. Didn't the Commission find in their opinion that the second accident was an intervening event that broke the chain of causation? Yes, that's what it says before that in Bogle. There's a... Every natural consequence that flows from an injury that arose out of the course of the plaintiff's employment is compensable unless caused. And that's what they found. Well, can you tell us then why, in your opinion, the second accident did not break the chain of causation? I would look to the testimony of Dr. Butler. He said he knew very little about the second accident. This is on page 741 of the transcript. I asked him, would you agree that it would be appropriate to know things like what happened to her body in this collision, what the speed was, whether she was seat belted in order to determine what effect this collision had on her. Answer, I think those are some of the details that would have been... And what treatments she might often require as a result of that motor vehicle collision. Are you citing Butler's testimony? Yes. Page 26 of his deposition, which is page 741. The point is, he doesn't know what this motor vehicle accident did to her. So how could it be that he's the only one who thinks it did anything to her? So there's no proof that this motor vehicle accident did anything to her. Well, rather than citing her, who's Dr. Sokolowski? He's the treating doctor who recommended surgery. He was saying that following the second accident, she had precisely the same symptoms, same findings. I mean, that's obviously your argument, right? That the second accident didn't change her injuries at all. Right. The second accident doesn't change her injury at all. It doesn't change the pathology. It doesn't change the images on the imaging studies. All right. So who says that? Is there any medical evidence to support that argument? We're talking about Sokolowski and Butler here. Butler doesn't really help you, okay? Yeah. And I think he doesn't help the defense either. That's what I'm trying to suggest. Okay. Because he doesn't know what effect the motor vehicle accident had on her. Well, on behalf of your claimant, is there some medical evidence you can cite to us that supports her? Supports her? Yes. That his symptomatology, the nature of injury, didn't change at all after the second accident. I think Dr. Sokolowski supports that. Because he says that the imaging study taken in 2011, after the motor vehicle accident, showed no changes from the imaging study taken four days after the compensable slip and fall accident. He says there's no change. And what about your claimant, your client? She testified essentially to the same thing? Yes. She said she wasn't hurt in the accident. She said it was just a tabbed wound to her car, one inch, no property damage. Didn't hurt her at all. That's what she testified to. And her passenger, her mother testified that she didn't even know that there – the passenger didn't even realize that there had been a motor vehicle impact. So it was a rear-ender without any property damage, yet the commission found that somehow this accident knocked her into MMI. She was on TTT at the time of this motor vehicle accident. She was not at MMI. No doctor had pronounced her at MMI. And the commission finds, somehow, that this accident knocked her into MMI and put her at MMI, and that everything else thereafter is due to the motor vehicle accident. All right. Now, obviously, you're saying that's against the manifest way of the evidence, right? Yes. Okay. Yeah. Other pages of Dr. Butler's deposition that further support my conclusion that he can't – So that doesn't carry – that doesn't prove anything. On page 27, I asked him, You don't really know what happened to her in this accident or how the accident affected her body. Answer, I have already told you. I don't have all the details. No. Also on page 27, which is 742 of the transcript, was that what you now call a protrusion? Was that caused by the work accident that she described to you that occurred on June 28, 2010? Answer on page 28, It's hard to know without a pre-injury MRI, but – So that's how he ended his sentence. It's hard to know. He doesn't know what the accident did to her. If the commission has come to the conclusion that somehow this accident is the sole cause of her current place of pain, and is the sole cause of the defect shown in the imaging study, the sole cause of the surgical recommendation that Dr. Sokolowski made, there's no support for it in the evidence. I think we understand your argument. Anything on the other points you raised besides the manifest weight issue? Well, that's the legal argument I was going to stand on my briefs on. Okay. I don't really have much to add. I think that affirmative defenses are not required under the Workers' Compact. That's true. But we do have a permanent total case law that talks about burdens shifting after the plaintiff goes forward with approving a prima facie case. The burden shifts. I think the burden should shift here too, where the respondent is claiming intervening accident cuts off possible cause. They should have the burden of proving that. Maybe they shouldn't have to give an affirmative defense in pleading, but they should have the burden of proving that, and I think they willfully fail to do that. I think that's, although it's not required under the Workers' Compact, the burden of proof is something that this court is empowered to assign, and judges in light of that, I think that the respondent willfully failed to maintain the burden of proof. The commission's decision basically is a compromise. This is an argument in my brief too that probably your Honor will recognize. Butler said that she reached MMI in August of 2010, and any treatment related after that is unrelated. But Dr. Sobolowski says she's never been at MMI, and all of her treatment is related to the motor vehicle, to the Slippery Fall accident at Binney's. But somehow the commission looks at these two views and comes up with a compromise view, which is that the motor vehicle accident of January 18, 2011, cuts off all causation thereafter, and she's at MMI as of that date, and there's nothing thereafter that causes it to relate. That's a compromise view. There really wasn't support by either Dr. Sobolowski or Dr. Butler. And compromise is nice, but I think that a compromise would be said to have no rational basis in the medical evidence, which is another reason why this decision is against the manifest way. It's a compromise decision that doesn't have any basis in the medical evidence. Thank you. Thank you, Counsel. Can I ask for a reserve time for rebuttal? You will have five minutes in rebuttal. Thank you. May it please the Court, Your Honors. Mr. Webster, my name is Carter Esterling. On behalf of the appellee in this case, Bennings Beverage Depot, counsel for the appellant, as you've heard, has argued that the commission in weighing the evidence in this case got their decision so wrong that what was a unanimous commission decision affirmed at circuit court level is against the manifest way of the evidence. As detailed in our brief, I strongly disagree with that reading of this evidence. Before you get to the point that you're going to, I'd like you to just recite to us what evidence is there in the record in regards to the automobile accident. So what did the commission have before it in terms of any evidence that might support Dr. Butler's opinion here that would support the commission's determination that the motor vehicle accident was an intervening event that broke the clause of change? Well, for one thing, I would disagree with counsel's characterization of Dr. Butler's testimony. If you would, just tell us what the evidence was regarding the motor vehicle accident. Well, obviously one piece of that evidence would have been the claimant's testimony as well as testimony of the other individual in the vehicle. I would say there's also evidence contained within her own physician's treatment records, those of Dr. Cravetti. Okay. Tell us what that evidence was. What did Dr. Cravetti note in regards to the motor vehicle accident? I think it's instructive here, if I may go back to his last visit before the motor vehicle accident, which was on January 6, 2011, and keeping in mind, of course, he's seen Petitioner since shortly after the initial work accident in this case. Well, if you could just stay with the line of questioning here. Sure. You say Dr. Cravetti's notes bear on the motor vehicle accident. What did Dr. Cravetti say about the motor vehicle accident? I just want to hone in on the circumstances of the motor vehicle accident. He noted a stark difference in her subjective symptoms and complaints, before and after the motor vehicle accident. Okay. Well, I mean, I guess I've got to ask you to be even more specific. Sure. Because I'm looking at Dr. Cravetti's note after the accident, and, frankly, I can't find any description of the motor vehicle accident itself, any symptoms that she had as a result of the motor vehicle accident. In fact, the only thing that I see is that her pain rating was lower following the motor vehicle accident than before. So can you tell me where in the medical records there is a description of the accident, the mechanism of, first, if there was an injury, secondly, what the mechanism of the injury was, anything that would support a finding that the motor vehicle accident was an intervening event that broke the causal chain? To some degree, you have to infer based on the person's symptoms and complaints. Of course, she's the primary reporter of her symptoms. So on January 6th, she's telling Dr. Cravetti she's feeling much better. She has no radicular complaints at that point in time. She had reduced her pain medicine intake. Dr. Cravetti is stating at this point, which is, of course, 12 days prior to the motor vehicle accident, that he's anticipating full-duty discharge within two weeks of this visit. So 12 days later, in other words, within two weeks of this visit, is when the motor vehicle accident occurs. Two days subsequent is when he sees her on January 20th, 2011. He examines her. He indicates that her pain has increased. Her radicular symptoms have recurred. Her pain complaints, in my reading, had increased to 5 out of 10 from 2 out of 10. To Dr. Cravetti from Petitioner, he noted that she was, quote, more lethargic, end quote, and that she was tearful in the examining room. At no point in Dr. Cravetti's or Dr. Meda's direct treatment records had there been any descriptors like this. These are, in other words, new symptoms, new complaints of a new severity that this person is reporting to him. She had an MRI in July of 2010, did she not? Yes. And what were the findings of that MRI? I believe that there was disc herniation. At L5S1. Correct. She had another MRI in March of 2011. What were the findings of that MRI? I believe they were relatively similar or the same. So if she has the same objective findings in March of 2011, which comes after the automobile accident as she had prior to the automobile accident, how can it be said that the automobile accident is some type of an intervening cause which broke the causal connection? If there's an opinion that the herniation she had at L5S1 is job related. Because there was a total change in her symptomatology from prior to and after the work at the motor vehicle accident. She still had a herniation at L5S1. She did, but she was pending a full duty release, which I should note as well, would have been the third time she would have been released to full duty work after the work accident, prior to the motor vehicle accident. But an intervening cause has to totally break the causal connection. Now, the fact that a subsequent accident may contribute to her conditions, but is not the sole cause of her current condition, does not deprive her of the right to receive benefits under the Act, does it? No, that's not the argument, though. But the question is, she has a herniation at L5S1, which I believe the testimony establishes is work related. Is she not entitled to treatment for that disc herniation subsequent to the automobile accident? If it hasn't changed? No, she is, if it hasn't changed. I believe it has changed, and I believe the Commission found that, and they had a basis to find that based on. What was the basis for that finding that it had changed? I believe the basis would be the petitioner's own treatment records, and as well it would be the opinions of Dr. Butler, who stated, as noted on page 10 of our brief, he didn't agree that the MRI films necessarily supported this conclusion, that there was no injury to her low back on January 18, 2011, which was a testimony of Sokolowski, and he didn't agree that she was more susceptible to such an injury as a result of a work accident. Sokolowski clearly said that the claimant had the same symptoms, the same anatomic distribution, similar findings. He clearly says that that accident didn't affect in any way her work-related injury, correct? Admittedly, the Commission doesn't have to believe them, but wasn't that his testimony? He did state that, yes. I want to ask you one thing about the symptomatology. Tell me if this is incorrect. On January 6, 2011, the claimant rated her low back pain a 6 out of 10. Is that correct? If you're looking at the record, Judge, I will defer to that reading. On January 19, 2011, the day after the motor vehicle accident, she reported her low back pain was 3.4 out of 10. The next day she reported her low back pain was 3 out of 10. How is her symptomatology getting worse? Did I miss something? She reported her pain showing down. She's also reporting, subsequent to the motor vehicle accident, an increase in radicular symptoms, which had previously been completely nonexistent. And where is that noted? The fact that the radicular symptoms recurred would be noted in Dr. Cravetti's January 20 record, and obviously the resolution of those is noted in his immediately precedential treatment note I'm not saying he attributed them specifically to the motor vehicle accident. He did state that she had them at that time is my reading of his opinions. He just restated it. Are you looking in the assessment portion of the note? Judge, I don't have that record right in front of me at this moment. I can tell you that the January 20th note that starts out with the history of the motor vehicle accident, then it goes through his findings. There's no mention made of radicular symptoms in the findings. And then his assessment, it seems to be a restatement of what had previously been the assessment, low back pain with radiculopathy, secondary to L5-S1 disc herniation. What I'm wondering in the questions that I've been asking you, is there a record other than this January 20th record of Dr. Cravetti that more fully supports Dr. Butler's opinion or the commission's finding in regards to the motor vehicle accident being an intervening event that would break the causal chain? In terms of the medical evidence, I think that the Dr. Cravetti reports and the opinions of Dr. Butler would be it. I think the commission was also looking at the credibility of this petitioner. I think that they were probably certainly taking into account the fact that this is a person who testified. She couldn't recall having become tearful in the doctor's office after the motor vehicle accident. She basically couldn't remember any of this, which to me strains belief. And they also had essentially stated that her denial of any recovery, I think, was non-credible. So they didn't come out and state the petitioner was non-credible, but I think that's another factor in addition to the medical evidence that we have to assume the commission was relying on in assessing this. You spent a lot of time emphasizing Dr. Butler's testimony because it supports the employer's position and the commission relied on it, but I wanted to ask you a question about Butler's testimony. He says the claimant went from someone who was functioning back into the workplace before the accident to someone who was dependent upon a back brace and a TENS unit and taking multiple narcotics after the accident. In fact, the claimant wasn't even working at the time of the accident, was she? She was not back at work, was she? She was late duty, I believe. She had been cleared to return to work full duty in August 2010. She did not seek any treatment then again until she saw Corvette on November 30, 2010, at which time she's back under a restriction. Did you say that she was working at the time of the accident? She was not full duty, Judge, no. No, but I mean you're saying that she had gone back to work? She had gone back prior to going back to Dr. Corvette. She had been full duty at that time between August and November. You said that she was on late duty, is what I know. Right. Before the accident. No, I apologize. She may have been off work at that time. The question was at the time of the accident, was she working at all? No, as far as I know, no. Well, doesn't that totally undercut Butler? He's got the facts wrong. He's got the information wrong. He certainly could see that this person was someone who, within the time window prescribed by her treating physician, was ready to return to full duty work, as far as we know. Corvette had said, within two weeks, I'm sending her back. Twelve days later is when the accident happened. So I think there is support for him to have concluded that she was basically done, she was ready to go back, and then something occurred, which obviously created such a substantial change in her condition that she's tearful, and she's having a hard time holding it together at the doctor's office. Well, I think Justice Hoffman accurately stated the rule earlier. I mean, how can you say that the original workers' comp injury is not a cause, it doesn't continue to be a cause of her condition of well-being after the automobile accident? It obviously is. I mean, she had a herniated disc. Everybody agrees she got it at work. Even if the automobile accident makes it worse, it's still, the work-related accident is still a cause of her condition. Well, again, I would point out, I'm just having a real hard time here understanding how the commission could say that this broke the causal chain. Well, I think they were looking at her treatment records, obviously, leading up to that accident, because at the time of the motor vehicle accident, there had been no IMEs. So they are considering that this is a person who has made, as far as we know, a totally successful full-duty return for three months post-accident. She goes back, has a little bit more palliative care, consistent with what she'd had prior. At that point, then, right on the cusp of her going back to full duty and being discharged by her treater is when the motor vehicle accident happens. It's still the same injury, though. I mean, now it would be different if she has a motor vehicle accident. Now she's got a herniated disc at a cervical disc, and it's a totally different injury. You know, that's a different thing. Well, at that point in time, prior to that motor vehicle accident, nobody had been recommending or even discussing that she needed a low-back surgery. Nobody had been discussing that she needed a deferral for pain management treatment, which came later after she had seen Dr. Sokolowski roughly two-and-a-half months post-motor vehicle accident. Wasn't she getting epidural injections prior to that? Pardon me? Wasn't she getting epidural injections prior to the motor vehicle accident? I believe she did have one in the course of the initial treatment, and then, of course, she had more after the motor vehicle accident. Obviously, I would argue that the initial epidural and the other conservative treatment she had was successful. When you say successful, it certainly didn't eliminate the disc herniation at L5-S1, did it? No, I can't say that, but we also have no evidence that the L5-S1 herniation was so symptomatic at that point prior to the motor vehicle accident. That's not the question I have. If the motor vehicle accident is found to be an intervening cause that breaks the causal connection between her current condition and her work-related accident, she would not be entitled to any permanency award for the L5-S1 herniation if there was, in fact, an intervening cause. But there is absolutely no question. And she had an L5-S1 disc herniation that was caused by a work-related injury, and she had the same L5-S1 disc herniation subsequent to the motor vehicle accident. So where would she go for a permanency award because of the disc herniation? She may be at MMI. She may not be entitled to TTD. That they're going to have to determine. But the fact of the matter is, if she still has the disc herniation, where would she go for permanency? I'm not making an argument that she had no entitlement to permanency prior to the motor vehicle accident. Certainly there are many cases where a person may have a disc herniation, whether a surgical lumbar, which is not symptomatic to the degree that they need a surgery, yet there is still permanency assigned, and appropriately so. But in this case, you know, that's simply not my argument. But her current condition of ill-being is an L5-S1 disc herniation that now happens to need surgery. But that's her condition of ill-being. The commission seems to be saying that her condition of ill-being is not causally related to the work-related accident. Is it a different disc herniation, L5-S1, than she had when she was injured at work? I don't see that there's a different disc, no. Well, there can't be. So I don't understand how it is that they say that her current condition of ill-being, i.e., disc herniation at L5-S1, is not causally related to her work injury. I think they're relying primarily on the totality of the evidence, including her testimony and the records of the treating physicians, who were the only ones to see her pre- and post-motor vehicle accident, unlike Sokolowski and unlike Butler. Well, why don't we start with the definition. What was her current condition of ill-being prior to the automobile accident? Prior to the automobile accident, she did have the low back injury. You're really saying she had no symptomology that had resulted, right? Correct. It was managed at a certain level, is that correct? Correct. And you're saying after the accident that symptomology changed, is that correct? Correct. And so that's what you're saying is the reason for the commission's decision that there was an intervening brachial causation? That would be one basis. Not only that, the symptomatology. Well, it would be another objective basis, because apparently the objective evidence is that it's the same disc, the same rupture. You have one doctor saying, I can read that film differently. Right. Well, I think they were looking not only at the changes in symptomatology, but as well at the change in what the doctors were recommending in approaching that symptomatology. Where was the change in symptomatology? Her pain went down? The presentation two days post-vehicle accident of being in tears. Well, January the 6th, 2011, Covetti's office notes indicated that she rated her pain at 6 out of 10. On January the 19th, the day after the accident, she reports her back pain at 3.4 out of 10. It went down. It didn't go up. So her symptomatology didn't decrease. It didn't increase. It decreased. Subjectively, I think it actually did increase. Subjectively, when she reports it? Subjectively, yes. In so many cases, respondents put in a position of taking the claimant at face value in terms of their subjective complaints, and, of course, that makes sense, because how does anyone know what the patient is suffering better than they do, right? Well, in this case, there's no doubt that her presentation, her subjective complaints were severely different after that motor vehicle accident. So Covetti's notes are wrong? Pardon me? Covetti's notes from January 6th as compared to his notes of January 19th are in error? I'm not suggesting that they're in error. I'm suggesting that they document this person having a severe change in her symptomatology and her complaints. They documented by the pain going down. You're confusing us. It's documented by his reference to her presentation stating she's more lethargic, she's presenting to me in pain, in tears. Okay, but that's what documents her pain has gone down. He also documents that, right? Yes. I'm assuming that she documented that and he incorporated that as part of his record. But before you said who's better to judge the level of pain than the patient, is that somewhat contradictory to what then the doctor's looking at and then coming up with a different assessment? Well, her pain behavior is certainly different than what it was prior to the motor vehicle accident. Okay. So having said all that with regard to the, obviously, the conflicting medical evidence, which is, of course, the commission's province to reconcile, I think there was ample evidence that supported the commission's finding that Petitioner's January 18, 2011 motor vehicle accident amounted to an intervening accident breaking the chain of causation. I would note not only did Dr. Cavetti's notes, in my opinion, suggest this, Dr. Butler as well, and Dr. Neda, it should be noted also, treating physician had discharged this person from care well before, about three months before the motor vehicle accident. So we have, in my opinion, two doctors, a treating physician, Cavetti and an examining physician in Butler, offering statements supporting a change in her condition, whether subjective or objective. I think we've got that. I think there was a change. I think your time has expired here. Thank you, Judge. Thank you very much. Thank you, Counsel. Counsel, you may reply. The commission cited Dr. Cavetti's records for proof that the accident changed, the motor vehicle accident changed her symptomatology. If you look closely at Dr. Cavetti's records, as you have, and I did in my brief, the pain is actually going down, or whatever higher readings there are, are very slight. And the therapy records show that, too, that her pain really did not go up after the motor vehicle accident. Yeah, we noted that, that actually they went down, not up. Right. And then Cavetti said in his records, a month later when she does have increased pain, he says it's probably secondary to pushing her too hard in therapy. And she did have an epidural in December 2010, so her pain was probably well-managed because of her epidural. Dr. Bonner never expressed her pain by the second MRI because I did a year of action and sustained. And so whatever his pain is by the second MRI, we don't know because it's not on the record for that reason. I think at most what this patient has is an aggravation from the motor vehicle accident, which is irrelevant under BOVA. Thank you very much. Okay, thank you, counsel. Thank you, counsel, both for your arguments on this matter. We'll be taking that under advisement whenever the disposition is not issued.